**FILED**

MAR **3 0** 2016

JULIE RICHARDS JOHNSTON, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### CASE NO. 7:16-CV-56-FL

| | |
|---|---|
| **CALVIN TYRONE NORTON,** *Plaintiff,* | ) ) ) |
| v. | ) ) |
| **KEVIN TABRON,** in his personal capacity and his official capacity as S.B.I. Special Agent for the Coastal District of North Carolina; **BRENNAN REGNER,** in his personal capacity and his official capacity as S.B.I. Special Agent for the Coastal District of North Carolina; **JONATHAN DAVID aka JON DAVID,** in his personal capacity and his official capacity as District Attorney for the 13th Prosecutorial District of North Carolina; **DANIEL THURSTON,** in his personal capacity and his official capacity as Assistant District Attorney for the 13th Prosecutorial District of North Carolina; **LEWIS HATCHER,** in his personal capacity and his official capacity as Sheriff of Columbus County, North Carolina; **ROBBIE SELLERS,** in his personal capacity and his official capacity as Lieutenant of Columbus Detention Center; **JEFFREY ROSIER,** in his personal capacity and his official capacity as Chief of Police of the Whiteville Police Department; **AARON HERRING** in his personal capacity and his official capacity as Sergeant Detective for the Criminal Division of the Whiteville Police Department; **STEVEN STRICKLAND,** in his personal capacity and his official capacity as Police Officer of the Whiteville Police Department; *Defendants,* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) **COMPLAINT**  **JURY TRIAL DEMANDED** |

NOW COMES, Plaintiff Calvin Tyrone Norton (pro se) complaining of the Defendants state as

follows:

## JURISDICTION AND PARTIES.

1. All Defendants reside in the federal Eastern District of North Carolina, laying proper venue here *per 28 U.S.C. § 1391(a)(1)* and conferring jurisdiction over Defendants' persons.

2. Plaintiff sues under *42 U.S.C. § 1983* for violation of his Fourth Amendment right to be free from unreasonable seizure under color of state law, for violation of his Fifth Amendment right for protection against self-incrimination, Sixth Amendment and for the violation of his Fourteenth Amendment rights, privileges, and equal protection of laws conferring subject matter jurisdiction upon any United States District Court and pendent state law jurisdiction *per 28 U.S.C. § 1367.*

3. That this court otherwise has already establish in Judge Boyle's previous order file 7:14-cv-00260-BO and US Fourth Circuit Appeals Judgment No: 15-1383 arguments of a gatekeeper order on file in state Courts.

4. Plaintiff Calvin Tyrone Norton ("Norton") is a resident, citizen, and domiciliary of the Eastern District of North Carolina.

5. Defendant Kevin Tabron (hereinafter reference as Tabron) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as a S.B.I. Special Agent for the Coastal Division of Onslow County, North Carolina acting as an agent to the State of North Carolina Public Safety under color of law and subsequently he acted out of the scope of his employment to harm another otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his actions of actual malice, reckless disregard of the truth, and corrupt misconduct as alleged herein throughout this complaint and that he is coverage by liability insurance.

2

6. Defendant Brennan Regner (hereinafter may be reference as Regner) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as a S.B.I. Special Agent for the Coastal Division of Onslow County, North Carolina acting as an agent to the State of North Carolina Public Safety otherwise is not immune for the claims asserted in this Complaint, subsequently he acted out of the scope of his employment to harm another or have waived any immunity they may have through his actions of actual malice, reckless disregard of the truth, and corrupt misconduct as alleged herein throughout this complaint and that he is coverage by liability insurance.

7. Defendant Jonathan David(hereinafter reference David) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the duly elected District Attorney for the 13th Prosecutorial District of North Carolina *pursuant to Article IV, § 18 of the North Carolina Constitution, N.C.G.S. Article 9 § 7A,* which includes within its jurisdiction the County of Columbus (the "District Attorney") acting as an agent to the State of North Carolina under color of law otherwise is not immune for the claims asserted in this Complaint, or have waived, absolute immunity, sovereign immunity, qualified immunity or any immunity they may have through his actions of actual malice and corrupt misconduct as alleged herein throughout this complaint and that he is coverage by liability insurance.

8. Defendant Daniel Thurston (hereafter reference as Thurston) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently an assistant District Attorney for the 13th Prosecutorial District of North Carolina *pursuant to Article 9, § 7A-63,* which includes within its jurisdiction the County of Columbus (the " Assistant District Attorney") acting as an agent to the State of North Carolina under color of law and reports to and is supervised by the " "District Attorney" otherwise is not immune for the claims

3

asserted in this Complaint, or have waived absolute immunity, sovereign immunity, qualified immunity or any immunity they may have through his actions of actual malice and misconduct as alleged herein throughout complaint and that he is coverage by liability insurance.

9. Defendant Lewis Hatcher (hereafter reference as Hatcher) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the duly elected Sheriff for Columbus County *pursuant to N.C.G.S. § 162-1. , Article VII, § 2 of the North Carolina Constitution* (the "Sheriff") having authority to hire, appoint, the care and custody of the jail or his employees see./ *N.C.G.S. § 162-20.* acting as an agent to the county of Columbus under color of law and is covered by liability insurance covering the events and omissions herein, therefore has waived sovereign and governmental immunity through the purchase of liability insurance *pursuant to N.C.G.S. § 162-8., N.C.G.S. § 162-12., N.C.G.S. § 162-15.* with regard to these claims.

10. Defendant Robbie Sellers(hereafter reference as Sellers) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently the Lieutenant of the Columbus County Detention Center employed by the Sheriff acting as an agent under color of law having custody and care over the jail approved by the Sheriff *pursuant to N.C.G.S. § 162-20.,* and reports to and is supervised by the Sheriff otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance *see/ Art. 32 § 58-32.*

11. Defendant Jeffrey Rosier (hereafter reference as Rosier) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as the Chief of Police of the City of Whiteville acting under the umbrella of the city of Whiteville as an

4

agent under color of law, otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

12. Defendant Aaron Herring (hereafter reference as Herring) is a resident, citizen, and domiciliary of the Eastern District of North Carolina and is currently serving as the Sergeant of the Detective Criminal Division of Police of the City of Whiteville and reports to and is supervised by the Police Chief, acting under the umbrella of the city of Whiteville as an agent under color of law, otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

13. Defendant Steven Strickland (hereafter reference as Strickland) is currently a sworn Police Officer of the Whiteville Police Department and reports to and is supervised by the Police Chief acting under the umbrella of the city of Whiteville as an agent under color of law otherwise is not immune for the claims asserted in this Complaint, or have waived any immunity they may have through his conduct as alleged herein through coverage by liability insurance.

### FACTUAL ALLEGATIONS

14. That on December 5, 2013 an incident investigation report fraud to estate was done with by and through the Whiteville Police Department naming Calvin Norton as a suspect then ultimately assigned to Sergeant Detective Tedd Dixon.

15. The incident report was false, reckless disregard of the truth and not supported by sufficient evidence to support Norton as a support to the crimes alleged therein.

16. The Whiteville Police Department employs Detective Tedd Dixon and Detective Bobby

Fowler were the first investigators of the closed criminal matter against Norton

17. That Mr. Durwand Matheny, a private independent Sbi forensic was hired who opined the last testament will was not signed by the deceased but nevertheless he could not say who signed the will or any other documents.

18. The private forensic never formed an opinion that the plaintiff was a suspect to a crime or that Norton signed the questioned last testament will or any other documents in question alleged in the closed criminal case sought against plaintiff.

19. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner later prior to the empanel of a grand jury became joint investigators and at all times relevant, they never brought Norton in to do an original handwriting analyst to compare his signatures to any documents in question.

20. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, or Regner at all times relevant never called Norton in for questioning or a statement the same prior to them coercing another to get those warrants issued for an arrest of the matter.

21. Upon information and belief the testimony of Sergeant Detective Tedd Dixon's testimony will prove that the private forensic examiner through cross examination did not know who signed the documents if he opined Carlos did not and he placed supplement notes favorable to this plaintiff in the closed criminal file case sought against Norton prior to the file being tossed over to Sbi agents Tabron, Regner and Defendants David and Thurton's office. *(judicial review that Detective Tedd Dixon testimony will be offered as proof audio and by transcript upon further discovery if requested or if needed at all)*

22. Tedd Dixon's Testimony deposition will also prove that he took oral testimony from Dennis Sutton and the Forensic SBI guy by telephone conducting interrogatory questions and

6

responses that were favorable to this plaintiff and that he notated in the closed criminal file.

23. Tedd Dixon further wrote notes in the closed criminal file that he went to our District Attorney Jon David's Office with the collaborate evidence, three (3) assistant district attorneys Fred Gore, Chris Gentry, and Karen or Kaylin who in prosecutorial discretion, stated then that there was not enough evidence to charge Norton. *(these witnesses will be subpoena to testify for the plaintiff by deposition or trial of the matter)*.

24. The criminal process sought against Norton was terminated at that point and no one charged him.

25. That at this point a conflict of interest exists with the Defendants David and Thurston's office.

26. The testimony of Whiteville Police Department Tedd Dixon that the Defendant Chief Jeffrey Rosier eagerly thereafter nagged him to charge plaintiff, as regards to pending lawsuit against Rosier (see/ *Norton v. Jeffrey Rosier 4th Cir No: 15-1383, 7:14-cv-00260-BO)*.

27. Upon information and belief, the State doesn't have their own handwriting experts anymore and did not at the time of closed criminal case that was sought against Norton.

28. Upon information and belief Defendant Chief Jeffrey Rosier himself or he elected another to do so contacted Jon David's Office again after Tedd Dixon refused to charge plaintiff.

29. On or about October 17, 2014 Defendant Jon David acting corrupt, disregard of the truth, and out of malicious to prosecute Norton sent out a detail email to Special Agent Mack Warner accusing Norton of inflammatory felonies as such forgery, that he uses the same notary all the time and he also asked the S.B.I. to investigate plaintiff to see if there is a case to prosecute *(Exhibit 1)*.

7

30. That the statements in Jon David's email towards Norton were fabricated and the same sent to a third party.

31. Defendants Special Agent Kevin Tabron, Special Agent Brennan Regner, Jon David, Daniel Thurston, Hatcher, Sellers, Rosier, Strickland, and Herring all jointly re-initiated an investigation against Norton that was already terminated in an earlier procedure by Jon David's Columbus County Office and further took a statement from a notary who affirmed the execution of the will and other legal documents.

32. The defendants David, Thurston, Tabron, Regner, Rosier, Herring, Strickland, Hatcher and Sellers acted negligent, malicious corrupt to further investigate Norton for no significant reasons, with insufficient evidence for an improper purpose.

33. The notary Tamekia Ford Bellamy -co defendant is currently a certified officer of the State of North Carolina and was at the time documents were sealed. *(Exhibit 2)*

34. Mrs. Ford's statement certified the legal validity of those documents in question were properly done. *(Exhibit 3)*

35. That there was no newly discovered evidence collaborated at no point whatsoever to support that Norton ever committed felonies as to what these defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, or Regner accused him of oral or by written publication to the extent of forgery, uttering a forge, exploitation to an adult disability or obtaining property by false pretense.

36. All times relevant the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner knew they had no case to prosecute or arrest Norton.

37. Upon information and belief, thereafter on April 20, 2014 defendants Special Agent Kevin Tabron and Special Agent Brennan Regner appeared before a judicial magistrate and

8

initially lied in an affidavit to a judicial and made oral statements, acted reckless in disregard of the truth, without sufficient evidence to support that Norton committed the crimes they gave oral testimony or in an affidavit before the magistrate, and misled a judicial officer of the courts by the usage of false information and false evidence and abuse the legal process in doing so out of actual maliciously misconduct in a corrupt manner, they obtained six (6) felony warrants against the Norton. *(Exhibit 4 warrants)*.

38. Tabron and Regner's knowledge provided an unreasonably and untrustworthy basis for a man of reasonable caution to believe that a criminal offense has been committed plaintiff or is about to take place when they sought arrest warrants against Norton in the closed criminal matter.

39. The warrants obtained by Defendants Tabron and Regner were in violation of §15A-304.

40. That the warrants were invalid without and sufficient evidence to charge plaintiff with all six felonies alleged in exhibit 4 even if signed by a judicial magistrate.

41. That there were no material evidence, forensic experts or witnesses testimonies to meet the elements of those offenses proving plaintiff to be a suspect to the crimes.

42. That on June 3, 2015 Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner gave oral reckless testimonies in disregard of the truth to a secret grand jury, with no sufficient evidence, no probable cause and with held exculpatory evidence favorable to this plaintiff's innocence to cause six felonious indictments on Norton. *(see exhibit 5 indictments)*

43. There was no significant or sufficient evidence to support the warrants or the grand jury indictments in the closed criminal matter and that those indictments were invalid. *(see exhibit 6 prosecutor's voluntary dismissals)*

44. Norton denied the allegations through out the process and he plead not guilty to all charges.

45. That the deceased Carlos Sutton did in fact sign his name to the last testament will *(see attached exhibit 7 Document Expert Examiner Emily Will's report favorable to Norton)*

46. That there was no real suspect in the criminal matter sought against Norton. *(see exhibit 8 Carlos Sutton written transcript of his acknowledgment and affirmation of him signing his last testament will with the audio recorded Cd or flash drive attached)*

47. There was no probable cause to investigate Norton.

48. There was no probable cause to arrest Norton.

49. Upon information and belief, or review of discovery, on April 22, 2015 the Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner's actions and misconduct jointly has caused another to stop , detain, and the arrest of this plaintiff at his job without his will and involuntary.

50. Norton questioned the officers Herring,Strickland and the unknown Whiteville Police officer of their reasons to detain him and whats the arrest about or even the unjustifiable and unlawful force.

51. Defendants Steven Strickland, Herring, and another unknown city police officer placed plaintiff in a patrol vehicle and asked plaintiff custodial interrogation questions.

      a.) did you forged documents?

      b.) are you aware of Carlos Sutton?

52. The arrest was unjustifiable, violated statutory or constitutional equal protection laws, with unlawful force and physical restraint involuntary used against this plaintiff by the defendants Steven Strickland, Herring, and the unknown Whiteville city police officer .

53. Defendants Herring, Strickland, and the unknown officer jointly failed to warned plaintiff

10

the Miranda Rights required pursuant to N.C.G.S. 15A-401 (c) (1). *(see/ US Supreme Miranda v. Arizona for judicial review)*

54. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, or Regner had no real justification or legitimate purpose for the use of force whether by words or by physical restraint.

55. Defendants' at the Whiteville Police Department Rosier, Herring or Strickland and David or Thurston or Hatcher and Sellers did not obtained those warrants against Norton but their malicious and corrupt behaviors acting in negligence, with reckless disregard of the truth and refusing to cease from abusing the legal process and their authorities has clearly caused viewable established constitutional and statue violations against Norton.

56. The defendants Jeffrey Rosier told Aaron Herring , Steven Strickland, and his officers at the Whiteville Police Department arrest Norton and they acted as the perpetrators to intentionally bring harm to this plaintiff.

57. Up until this point, neither Defendants of the Whiteville Police Department Rosier, Herring, or Strickland had lawful or justified reason to stop Norton neither did they have warrants in their custody and control at the time of arrest.

58. Defendants of the Whiteville Police Department Rosier, Herring and Strickland took plaintiff to the Columbus County Detention Center controlled by the defendants Lewis Hatcher and Robbie Sellers before a judicial magistrate and at that time served him with the warrants obtained by the S.B.I.

59. Regner or Tabron absence at the detention Center doesn't set aside their existence and their corrupt behaviors when they are the ones who lied to a magistrate and their affidavit contains intentional falsehoods or material omissions with no sufficient evidence against

11

this plaintiff.

60. Plaintiff until this day has never seen neither Special Bureau Investigators who initially obtained those warrants.

61. While waiting at the jail, Detective Aaron Herring questioned plaintiff of how he blast him on his radio show during his candidacy race for Columbus County Sheriff prior to the jailers taking custody of plaintiff.

62. At that point Defendant's Miranda rights still yet was not warned.

63. Defendants Lewis Hatcher and Robbie Sellers were inside the jail and they processed Norton and ordered him to put on an orange jump suit to take a mug shot Mobile Patrol photo involuntary.

64. Theses defendants Hatcher and Sellers sent the photo with false allegations of the charges forgery, obtaining property by false pretense, uttering a forge and exploitation of an adult disability throughout third parties on Google , twitter, chrome, face book, public safety, wect news, wway news, the news reporter.

65. That the mobile patrol and mug shot information was in fact controlled by the defendant Hatcher and Sellers custody and control of the detention center that imprisoned this plaintiff.

66. Hatcher and Sellers were present and they participated at the detention center long side the other defendants of the Whiteville Police Department and while during the process Hatcher and Sellers failed the Miranda Rights legal sufficiency test and to advise this plaintiff of a right to an attorney before interrogatory questions or response began.

67. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner had a duty to acquire whether these warrants were valid with sufficient evidence

12

prior to confinement or should have if they claimed otherwise that they acted on a signed warrant.

68. Defendant Robbie Sellers and Lewis Hatcher further confined Norton behind steel doors without the plaintiff's will with an invalid warrant that should not have been issued.

69. After Plaintiff's release, Detective Tedd Dixon of the Whiteville Police Department on April 22, 2015 met with the Plaintiff and gave over an hour testimony that theses defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner framed him with those charges because he had no evidence to bring charges.

70. Detective Tedd Dixon of the Whiteville Police Department met with [plaintiff] Norton again on April 24, 2015 and revealed that his chief Defendant Jeffrey Rosier was involved in the plot and how the investigation was unfair.

71. All Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner acted out of bad faith to victimize Norton for an improper purpose.

72. That prior to the empanel of the grand jury defendants Rosier, Herring, Strickland, David, Thurston, Tabron, and Regner tampered with the evidence in the closed criminal file.

73. The defendants Rosier, Herring, Strickland, David, Thurston, Tabron, and Regner jointly were acting as investigators at the time they altered, destroyed, and removed Detective Ted Dixon's supplement notes form the criminal file, the initial investigation report at the Whiteville Police Department, audio or written testimonies of witness(es), notes placed in the file that the forensic did not even no who could have been a suspect to support his findings in the report that was favorable to Norton and to impeach on the state's witness(es).

74. David and Thurston left the cave of an advocate of the courts when they all became the investigators prior to the empanel of a grand jury.

75. The evidence these defendants Rosier, Herring, Strickland, David, Thurston, Tabron, and Regner with held, destroyed, altered or suppressed evidence that was not handed over to the defense in the discovery by and through the prosecutor's office upon request violating the statues § 15A-903, § 15A-975, § 15A-975 (b), § 15A-976, N.C.G.S.90-95(g) and the local rules of the 13th District and the constitutional rights of this plaintiff.

76. These defendants Rosier, Herring, Strickland, David, Thurston, Tabron, and Regner, Hatcher, and Sellers had duties to properly investigate turn over all evidence to the prosecutor's office to be given to the defense and they failed. *(see exhibit 9 Thurston and Davids Discovery Disclosure Certificate)*

77. The initial police report had only one suspect named, however these defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner wrongfully investigated Norton for another victim without a report done and thereafter caused false charges in an invalid warrant against him.

78. That there was no judgment entered in the closed criminal proceeding sought against Norton in the matter with finding of facts and conclusions of the law by the court neither was a consent judgment entered.

79. That it has already been established in the Defendant Daniel Thurston's dismissal findings that there were insufficient evidence in Norton's case to proceed and that Thurston was assigned as an assistant prosecutor e 13th who handle plaintiff's closed case.

80. That on February 25, 2016, Norton went to the Whiteville Police Department and demanded that any reports on file be immediately given now and he received the report from a receptionist. *(see exhibit 10 police report that was not given to defense in closed criminal case).*

14

81. **COUNT I: VIOLATION OF FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURE--**The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual and punitive damages from the defendants Jeffrey Rosier, Aaron Herring, Steven Strickland of the Whiteville Police Department, defendants Jon David and Daniel Thurston, and Hatcher and Sellers all for their actions under their custom and policies that caused harm to this plaintiff, for unreasonably seizing Plaintiff unlawful and total restraint of the liberty of this plaintiff against his will, involuntary confinement under color of state law acting as perpetrators or negligence in a malicious and corruptible manner to prosecute this plaintiff without no evidence whatsoever to support a crime, charge him or cause him to be charged with six felonies acting off an invalid warrant that should not have been issued and such to false arrest/false imprisonment plaintiff knowingly that they did not have probable cause to investigate or arrest Norton, further for improper purposes lacking probable cause to arrest Norton, if not inevitably, illegally use excessive force, together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988.*

82. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were both an unreasonable seizure as well as a termination of the criminal proceeding favorable to him." Id. at 261-62 (4th Cir. 2000).

83. That the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were malicious prosecution in fact caused the arrest of plaintiff, the seizure of the plaintiff pursuant to legal process unsupported by probable cause, and that a criminal proceedings terminated in plaintiff's favor.'" *Bryant v. Carico, No. 15-1082, 2015 U.S. App. LEXIS 16639, 2015 WL 5472642, at 1 (4th Cir. 2015) (quoting Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012).*

15

84. The warrants obtained by Defendants Tabron and Regner were invalid and the Supreme Court has already established that that the Constitution expresses a preference for searches, seizures, and arrests conducted pursuant to a lawfully executed warrant. *(see Mincey v. Arizona, 437 U.S. 385 [1978])*.

85. Defendants Tabron and Brennan initially and intentionally lied, misled, acted in reckless disregard of the truth to get the warrants signed by a judicial magistrate and violated N.C.G.S. §15A-304. A warrant is a written order signed by a court authorizing a law-enforcement officer to conduct a search, seizure, or arrest. Searches,seizures, and arrests performed without a valid warrant will be Suppressed unless a court finds that the search was reasonable under the circumstances. The Supreme court also said that probable cause exists when facts and circumstances within the police officer's knowledge provide a reasonably trustworthy basis for a man of reasonable cautious to believe that a criminal offense has been committed or is about to take place. *(see Carroll v. United States, 267 U.S. 132 [1925])*.

86. Further each of the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were out of the scope of their duties, responsibilities custom and practices or the employment to disobey the laws of the land, false arrest and cause false imprisonment to the plaintiff ultimately by confinement but otherwise by words, defame the plaintiff's by words out of malicious and gross behaviors.

87. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner are not barred by the Eleventh Amendment , Public Official Immunty, Qualified, Soverign, or Absolute Immunity because state institutions or employes are "persons" reachable under sec. 1983 for relief whereby the Supreme Court and Second Circuit Courts

has already established *Stephen Buckley, Petitioner v. Michael Fitzsimmons Et al* No. 91-7849 the Court found that the alleged fabrication of evidence occurred before a special grand jury was empaneled and petitioner was arrested. Therefore, the Court held that the prosecutors were only entitled to qualified immunity. The Court also found that one prosecutor was not acting in his role as an advocate for the state when he allegedly made false statements to the media during a press conference. Therefore, the Court held that the prosecutor was not entitled to absolute immunity. Judgment was reversed and remanded. A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity. The actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity represents the norm for executive officers, so when a prosecutor functions as an administrator rather than as an officer of the court he is entitled only to qualified immunity. There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand. When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other. Prosecutors held not absolutely immune from 42 USCS 1983 damages claims alleging (1) fabrication of evidence during preliminary investigation, and (2) making of false statements at press conference. An accused brought in the United States District Court for the Northern District of Illinois against a number of parties, including a state's attorney and other prosecutors, an action seeking damages under

17

42 USCS 1983, which provides a private right of action against a person who, under color of state law, violates another person's federal rights.

88. *Plaintiff claims are not barred against* Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for their reckless disregard of the truth, wrongful or improper misconduct out of malice and a corrupt manner to mislead, fabricate and destroy evidence favorable to this plaintiff and clearly violate statutory or constitutional rights. (see*Dr, Leonard Morse v. John Fusto* No: 13-4074) There was no error in denying qualified immunity as a matter of law to a former prosecutor and a former audit-investigator with the New York State Attorney General's Office Medicaid Fraud Control Unit, arising from their alleged fraudulent alteration of evidence during their investigation, because a dentist's constitutional rights were violated and the law giving rise to the violation was clearly viewable. The knowing creation of false or misleading evidence by a government officer acting in an investigative capacity qualifies as an unconstitutional deprivation of the victim's rights. Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Whether qualified immunity applies turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken. A right is "clearly established" if it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted.

89. Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner are employes in their official capacities to state institutions or state employes representing themselves under the umbrella of government are in fact "persons" reachable under § 1983

when sued for prospective equitable relief.(see *Dr. Alvis L. Corum v. Univerity of North Carolina* No: 163PA90 Supreme Court of North Carolina) held that Plaintiff could properly bring actions under 42 U.S.C. § 1983 for injunction relief against UNCU , ASU, and the individuals in their official capacities because state institutions or employees acting in their official capacities are "persons" reachable under § 1983 when sued for prospective equitable relief. Sovereign immunity alleged under state law is not a permissible defense to § 1983 actions. Nor is the defense of qualified immunity available under § 1983 to one sued in his official capacity. State officials sued for Constitutional violations under 42 U.S.C. § 1983 where the existence of a constitutional violation depends on proof of motivation, proof of the official's intent is required to determine whether the qualified immunity defense is appropriate.

90. Both Defendants' Jon David and Daniel Thurston confronted this preliminary investigation against plaintiff along with the other defendant's Rosier, Herring, Strickland, Tabron, and Regner not acting as an advocate of the Courts but as investigators and was involved prior to the secret empanel of the grand jury and while during, they removed, altered, or destroyed the initial Whiteville Police Report and the supplement notes from the investigation file after his office had a conflict of interest and terminated the earlier proceeding.

91. The facts as pleaded above the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions deprived Norton of rights of liberty without due process, privileges and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution, and under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

92. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and

19

Regner had no right under their employment to harm this plaintiff and recognizable violated his constitutional right within the scope of there employment otherwise out of the scope of their employment and duties.

93. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were negligence for their color of law abuse and they acted out of malicious, corrupt, and intentionally carried out for improper purposes.

94. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner acts were excessive, unnecessary and not justified under the circumstances.

95. **COUNT II: VIOLATION OF FIFTH AMENDMENT RIGHT TO PROTECTION AGAINST SELF -INCRIMINATION and DUE PROCESS** - The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual damages from the defendants Steven Strickland, Aaron Herring, Jeffrey Rosier, Hatcher, Sellers, failed to honor these safe guards, lured together to suppress plaintiff's rights herein the of the Miranda Rights and took Norton into custody knowingly that an actual waiver had not occurred and thereby deprived him of his due process constitution rights and a right to an attorney while acting willfully as perpetrators under the color of law statue, with an ulterior motive other than the right, if not individually, together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988.*

96. That all the defendants Steven Strickland, Aaron Herring, Jeffrey Rosier, Hatcher, Sellers, David, Thurston, Tabron, and Rgener had a duty to investigate the matters to see if the warrants were valid and they failed to do so.

97. David, Thurston, Tabron, Regner, Steven Strickland, Aaron Herring, Jeffrey Rosier, Hatcher and Sellers failed to equally protect plaintiff under the divisions of the Statues governing the

20

State of North Carolina, Common Laws, North Carolina State Constitution, and US Constitution while acting with reckless disregard of the truth, corrupt and out of malice wrongful or improper misconduct.

98. That the actions taken by theses defendants' Steven Strickland, Aaron Herring, Jeffrey Rosier, Hatcher, David, Thurston, Tabron, Regner, and Sellers violated the plaintiff's rights and affected him substantial in doing so.

99. The all of defendants' David, Thurston, Tabron, Regner, Steven Strickland, Aaron Herring, Jeffrey Rosier, Hatcher and Sellers acts were excessive, unnecessary and not justified under the circumstances.

100. **COUNT III: VIOLATION OF SIXTH AMENDMENT RIGHT TO SPEEDY TRIAL-** The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual damages from each defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for failure to properly investigate the matter and abuse the legal process without lawful justification and thereby deprived Norton of rights to liberty lacking while acting willfully as perpetrators or under the color of law statue, with an ulterior motive other than the right, if not jointly then individually, without probable cause to investigate or to arrest plaintiff or to even harass him violating his right to speedy trial.

101. Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner testified to a secret panel grand jury on June 3, 2015 providing insufficient evidence and with held such favorable evidence supporting the plaintiff's innocence rather than to dismiss the charges these defendants pursued and victimized plaintiff to cause him unnecessary attorney's fees to defend frivolous charges.

102. David and Thurston could have dismissed these charges at an earlier stage on June 3,

2016 rather they willfully, corruptly, and wrongfully got a an grand jury indictment to further cause injuries to this plaintiff.

103. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were negligence for their color of law abuse and they acted out of malicious, corrupt, and intentionally carried out for improper purposes.

104. **COUNT III: VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PRIVELEGES OR IMMUNITIES CLAUSE, DUE PROCESS, AND EQUAL PROTECTION OF LAWS-** The facts as pleaded above show that Plaintiff is entitled *per 42 U.S.C. § 1983* to actual damages from each Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for failure to properly investigate the matter and abuse the legal process without lawful justification and thereby deprived Norton of rights to liberty lacking while acting willfully as perpetrators or under the color of law statue, with an ulterior motive other than the right, if not jointly then individually, without probable cause to arrest plaintiff or harass him, violating his privileges and immunities secured by the Fifth and Fourteenth Amendments to the United States Constitution, and by Article 1, Section 19 of the North Carolina Constitution knowing that there were insufficient evidence to prosecute prior to obtaining arrest warrants and failed to protect plaintiff equally under the provisions of our constitution in America together with court costs and any reasonable attorney's fee per *42 U.S.C. § 1988.*

105. That the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were negligence and out of malicious, corrupt, and intentionally carried out for improper purposes.

106. That the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher,

22

Sellers, and Regner also acted out of the scope of their employment by using and creating a custom policy or procedure inconsistent with the Constitution and laws of the land to injure this plaintiff.

107. The defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner acts to false arrest and cause false imprisonment to plaintiff were excessive, unnecessary and not justified under the circumstances.

108. **COUNT VI: PROSECUTORIAL MISCONDUCT**- The facts as pleaded above show that Defendants' Jon David and Daniel Thurston willfully, maliciously prosecuted and withheld evidence from plaintiff in the closed criminal case knowing the US Supreme Court has held that the prosecution has a constitutional accountability and duty to turn over to the defense evidence that tends to show the defendant is not guilty or deserves a lesser punishment.

109. Defendants' Jonathan David and Daniel Thurston certified on August 25, 2015 that all evidence were turned over.

110. However the Defendants' David and Thurston did not turn over the initial police report of Whiteville Police Department involving the plaintiff.

111. Defendants' David and Thurston tampered with the evidence or knew the evidence was missing and removed, altered, or destroyed reliable evidence belonging to Detective Tedd Dixon files as such any conversations audio, written, or by all other means with witnesses even the forensic retired S.B.I. when he could not say the plaintiff was the criminal.

112. The police report was a reliable material that all defendants acted on.

113. The evidence was material an issue at trial of the matter.

23

114. Defendant's David and Thurston with held additional supplement notes of Detective Tedd Dixon favorable to the plaintiff either exculpatory or useful in impeaching the State's evidence.

115. Defendants' David and Thurston suppressed evidence favorable to plaintiff accused upon the request and violated the due process where the evidence is either by material to guilt or to punishment, irrespective of good or bad faith of the prosecution.

116. Defendants' David and Thurston knew such evidence suppressed will affect anther's ability to defend the action.

117. That the conduct of the Government Defendants' David and Thurston was in fact improper and that the improper conduct prejudicially affected his substantial rights so as to deprive Petitioner of a fair trial." Derring v. United States, 2015 U.S. Dist. LEXIS 100627, 25-26 (W.D.N.C. July 31, 2015) (See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993).

118. That the plaintiff is entitled to recover sanctions from each defendants' David and Thurston for reasonable expenses caused by the failure, including attorney's fees.

119. **COUNT VII: NORTH CAROLINA COMMON LAW DEFAMATION – SLANDER- SLANDER PER SE-** The facts as pleaded above show that Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence.

120. Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner acted on an invalid warrant to arrest this plaintiff.

121. The Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher,

24

Sellers, and Regner slandered the plaintiff by words or written publication through social media and other news outlets among billions of viewers and has exposed plaintiff to ridicule.

122. The statements made by the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner were not supported by sufficient evidence to prove Norton committed forgery, uttering a forge, obtained property by false pretense, or exploitation to an adult disability and defendants actions were negligently or intentionally communicated to third parties.

123. Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner false statements were communicated in the news media viewable to millions and in the News Reporter, News Channel 6 website, News Channel 3 web sites, Google, chrome, face book, twitter as a result of the defendants' malicious behaviors towards the plaintiff.

124. Defendants Hatcher and Sellers used a mug shot photo of plaintiff in an orange jump suit and placed it on their mobile control website viewable for millions to see with the same false information attached to the photo to third parties.

125. The communication used by these defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner reflected negatively on the plaintiff's character, morality, or his integrity.

126. The statements made by the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner tends to hold plaintiff up to scorn, hatred, ridicule, disgrace, or contempt, in the mind of any considerable and respectable segment of the communities.

127. That the plaintiff is entitled to recover damages from the defendants' Rosier, Herring,

25

Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for any injuries that he incurred as a result of the defamatory statements, lost earnings and lost earnings capacity suffered as a result of the defendants' statements.

128. The plaintiff is also entitled to recover from the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner pain and sufferings, impairment to reputation and standing in the community, personal humiliation, shame, and disgrace.

129. **COUNT VIII: NORTH CAROLINA COMMON LAW DEFAMATION LIBEL-** The facts as pleaded above show that Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence.

130. Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner false statements were published in the news media viewable to millions and in the News Reporter, News Channel 6 website, News Channel 3 web sites, Google, chrome, face book, twitter as a result of the defendants' malicious behaviors towards the plaintiff.

131. The defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner knew their statements were false and defamatory, or they acted with reckless disregard of the truth or falsity of the statement in making the statements to third parties, or acted negligently in failing to ascertain whether the statements were true or false before making it.

132. The statements made by the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner that plaintiff committed forgery, uttering a forge, obtained property by false pretense, or exploitation to an adult disability tends to hold

26

plaintiff up to scorn, hatred, ridicule, disgrace, or contempt, in the mind of any considerable and respectable segment of the communities.

133. Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions has caused the damages to be displayed in the eyes of billions of people around the world and in mine on community.

134. That the plaintiff is entitled to recover damages from the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for any injuries that he incurred as a result of the defamatory statements, lost earnings and lost earnings capacity suffered as a result of the defendants' statements.

135. The plaintiff is also entitled to recover the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner over pain and sufferings, impairment to reputation and standing in the community, personal humiliation, shame, and disgrace from each of the defendants'.

136. **COUNT VIIII INFLICTING EMOTIONAL DISTRESS**- The facts as pleaded above show that Defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner willfully, maliciously, accused the plaintiff of serious, notorious, or immoral inflammatory felonies without sufficient evidence.

137. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner negligently engaged in conduct that resulted in severe emotional distress, and it was reasonably foreseeable that the conduct would cause such severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assoc., 327 N.C. 283, 304, 395 S.E.2d 85, 97, reh'g denied, 327 N.C. 644, 399 S.E.2d 133 (1990).

138. Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers,

27

and Regner caused the plaintiff severe emotional distress that has been defined by North Carolina Appellate Courts as "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." McAllister v. Khie Sem Ha, 347 N.C. 638, 645, 496 S.E.2d 577, 583 (1998).

139.    Plaintiff may recover for his severe emotional distress that he has suffered and such severe emotional distress as a proximate and foreseeable result of Defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner negligence.

140.    The defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner conduct exceeds all bounds of decency tolerated by society and the conduct caused mental distress of a very serious kind to this plaintiff.

141.    The defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner showed extreme and outrageous conduct which was intended and did cause severe emotional distress to the plaintiff.

142.    The defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were indicated a reckless indifference to the likelihood that has caused severe emotional distress to this plaintiff.

143.    The plaintiff is entitled to recover from the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for negligent infliction of emotional distress because the defendants' negligently engaged in conduct, it was reasonably foreseeable that such conduct did in fact cause the plaintiff severe emotional distress without necessarily proving the existence of physical injuries.

28

144. In order to deter defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner from further engaging in like conduct the plaintiff is entitled to recover for further compensation from defendants'Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner for withstanding particularly egregious behaviors, pursuant to section 1D-35 THREE TIMES THE AMOUNT OF ACTUAL DAMAGES.

145. **WHEREFORE**, Plaintiff prays that this Court enter judgment as pleaded above against the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner individual or jointly, and such other and further relief as this Court finds just and lawful.

146. That the courts find that the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner acted negligent, gross, reckless disregard of the truth, corruptible, and actual malice to victimize plaintiff and are held liable for all the claims asserted whether they claims are that they acted on what another party told them to do or insufficient or invalid warrants.

147. That the courts declare these defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner victimized the plaintiff individually or jointly and lack the probable cause to arrest him.

148. That the defendants' Tabron and Regner misled judicial magistrate of the courts with either false evidence or misleading evidence, acted with reckless in disregard of the truth, and intentionally lied to the magistrate in order to obtain the warrants for arrest of this plaintiff.

149. That the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher,

29

Sellers, and Regner each had duties to assure that the plaintiff has equal protection of the laws prior to or during the course of investigation and criminal procedure and they failed to do so.

150. That the warrants were invalid in the closed criminal case sought against plaintiff.

151. That the indictments were invalid in the closed criminal case sought against plaintiff.

152. Declare the state courts to clear plaintiff's criminal arrest records of all charges ever dismissed against him immediately.

153. Order the defendants Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner to issue a public apology to the plaintiff through media outlets and news reporters.

154. That the plaintiff requests damages to exceed Ten Million Dollars for the injuries theses defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner caused him.

155. Declared that the US Supreme Court has held that the prosecutor are not immune from these asserted claims and that these defendant's Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner are not immured and are held liable for damages under the divisions of US § 1983.

156. That whether the defendants' Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner actions were with in their individual capacity or in their official capacity they are liable for the damages which plaintiff seeks this court for.

157. That the defendant's Rosier, Herring, Strickland, David, Thurston, Tabron, Hatcher, Sellers, and Regner be taxed with the costs of this action with reasonable attorney's fees.

TRIAL BY JURY IS DEMANDED FOR ALL ISSUES SO TRIABLE.

30

This the 28th day March, 2016.

Respectfully submitted,

/s/ *[signature]*

Calvin Tyrone Norton
PO Box 1145
Whiteville NC 28472
Phone 910 840 1352
Email nortoncalvin@yahoo.com