IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-00056-FL

| | |
|---|---|
| CALVIN TYRONE NORTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| KEVIN TABRON, in his personal capacity and his official capacity as S.B.I. Special Agent for the Coastal District of North Carolina, and BRENNAN REGNER, in his personal capacity and his official capacity as S.B.I. Special Agent for the Coastal District of North Carolina, | ) ) ) ) ) ) ) ) ) ) |
| Defendants.[1] | ) |

ORDER

This matter is before the court on plaintiff's motion for summary judgment (DE 62), defendants' motion for summary judgment (DE 66), plaintiff's motion to strike (DE 76), defendants' motion to seal (DE 71) and a motion to withdraw (DE 84). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, this court denies plaintiff's motions, grants defendants' motion for summary judgment, grants the motion to withdraw, and grants in part and denies in part defendants' motion to seal.

**STATEMENT OF THE CASE**

On March 30, 2016, plaintiff filed this civil rights action, pro se, against defendants, employees of the State Bureau of Investigation ("SBI"), and previously-dismissed former

---

[1] This court constructively amends the caption of this order to reflect the dismissal of the previously-named defendants. (See DE 51).

defendants.[2] (DE 1). As is currently relevant before this court, in his unverified complaint, plaintiff alleges defendants participated in an investigation of plaintiff and lied to a magistrate judge, prosecutor, and grand jury in order to obtain an arrest warrant and indictment against plaintiff in violation of the Fourth Amendment to the United States Constitution. (Id.).

Following multiple motions to dismiss from defendants and former defendants, (DE 8, DE 16, DE 32, and DE 37), the court determined on October 6, 2016, that plaintiff's only remaining claims against defendants were against defendants solely in their individual capacity and were for unreasonable or unlawful seizure or malicious prosecution under the Fourth Amendment. (DE 51 at 12, 14, and 15). Additionally, the court "expressly reserve[d] its ruling on whether [defendants] Tabron and Regner are entitled to qualified immunity." (Id. at 13).

The court details here a somewhat involved procedural history as it relates to the motions now pending. On June 22, 2017, plaintiff filed the instant motion for summary judgment. (DE 62). In support of his motion, plaintiff relies upon declaration of Lakeita Gause (DE 62-1); declaration of Calvin Tyrone Norton (DE 62-2); declaration of Fredrick Foster Chancey (DE 62-3); declaration of Tamekia Bellamy (DE 62-4); Tamekia Bellamy notary license (DE 62-5); Emily Will document examiner report (DE 62-6); transcript of recording of Carlos Sutton (DE 62-7); investigation report (DE 62-8); certificate of probate (DE 62-9); last will and testament of Carlos Dean Sutton (DE 62-10); Durward Matheny document examiner report (DE 62-11); defendant Regner's response to plaintiff's interrogatories, request for admission, and production of documents (DE 62-12); David

---

[2] The previously-dismissed former defendants are Jon David, district attorney; Daniel Thurston, assistant district attorney; Lewis Hatcher, sheriff of Columbus County, North Carolina; Robbie Sellers, lieutenant of Columbus Detention Center; Jeffrey Rosier, chief of police of the Whiteville police department; Aaron Herring, sergeant detective for the criminal division of the Whiteville police department; and Steven Strickland, police officer of the Whiteville police department. (DE 1).

Sutton power of attorney (DE 62-13); David Sutton heath care power of attorney (DE 62-14); David Sutton general power of attorney (DE 62-15); David Sutton health care power of attorney (DE 62-16); Hugh Daniel interview report (DE 62-17); defendant Tabron's responses to plaintiff's interrogatories, requests for admissions, and production of documents (DE 62-18); and transcripts of conversations with Ted Dixon (DE 62-19, DE 62-20, and DE 62-21). On July 13, 2017, defendants filed a response in opposition to plaintiff's motion for summary judgment. (DE 77). On July 31, 2017, plaintiff filed a reply to defendants' response. (DE 82).

On June 30, 2017, defendants filed their instant motion for summary judgment (DE 66). In support of the motion, defendants rely upon affidavit of Wilton McBryde "Mac" Warner, III (DE 70-1); defendants' affidavits (DE 70-2 and 70-4); affidavit of Karen F. "Kaitlyn" Richards Toole (DE 70-3), plaintiff's discovery responses (DE 70-5); excerpts of interview reports from the SBI file (DE70-6, DE 70-7, DE 70-8, DE 70-10, DE 70-11, and DE 70-12), and affidavit of Durward Matheny (DE 70-9).

Defendants additionally filed a statement of material undisputed material facts pursuant to local rule 56.1. (DE 68). In support of this motion, defendants filed in replica select documents that defendants had filed in support of defendants' motion for summary judgment. (See DE 69). Defendants additionally filed the instant motion to seal documents, (DE 71), on June 30, 2017, which plaintiff opposed in a brief entitled "motion to deny plaintiff's motion to seal," (DE 74), on July 13, 2017.

On July 13, 2017, plaintiff filed a response in opposition to defendants' motion for summary judgment. (DE 75). Plaintiff filed the instant motion to strike defendants' motion for summary judgment on July 13, 2017, (DE 76), which defendants opposed in responsive filing made July 25,

3

2017, (DE 80). Finally, plaintiff filed a reply to defendants' opposition to plaintiff's motion to strike on August 3, 2017. (DE 83). And in the meantime, on July 28, 2017, this matter, the subject of a prior lawsuit voluntarily dismissed March 28, 2016, by plaintiff, contained in court file no. 7:16-CV-21,[3] was reassigned to the undersigned district judge.

## STATEMENT OF THE FACTS

Except as otherwise noted below, the undisputed facts are as follows. Jon David, district attorney, contacted the North Carolina State Bureau of Investigation ("SBI") on October 17, 2014, requesting assistance in investigating allegations made against plaintiff: "I am requesting an investigation of Calvin Norton. My office has been contacted by the Whiteville Police Department concerning allegations of forgery of signatures of recently deceased or clearly incapacitated persons. Evidently, at least two people have executed power of attorney of their entire estate to Calvin Norton." (DE 1-1; DE 69-1; DE 70-1). The email goes on to state that the documents at issue belong to two brothers, David Sutton and Carlos Sutton. (Id.) A third brother, Dennis Sutton, was the person who filed the above report with the Whiteville police department containing the allegations against plaintiff. (DE 63-8; DE 77 at 4).

Defendants were assigned to the investigation and interviewed 18 people, including relatives of Carlos and David Sutton, their medical care providers, and a forensic document examination expert. (DE 68 ¶ 3-4; DE 69-1; DE 69-2; DE 70-1; DE 70-2). Dennis Sutton told defendants that four months prior to Carlos Sutton's death, plaintiff's trailer had been repossessed and plaintiff had

---

[3] Plaintiff also maintains a separate lawsuit against defendant Rosier, which progressed to and returned from the United States Court of Appeals to the trial court, wherein it is alleged this defendant conducted an illegal traffic stop of plaintiff. This case bears court file no. 7:14-CV-260, and is pending also before the undersigned, having been reassigned by the clerk of court on July 28, 2017.

4

moved in with Carlos and David Sutton.[4] (DE 70-6). Dennis Sutton further informed defendants that plaintiff had not allowed Carlos to speak with anyone outside of plaintiff's presence and that Dennis did not believe that Carlos signed the will at issue that named plaintiff as executor and left Carlos' entire estate to plaintiff, including David's social security checks. (Id.).[5] Medical providers interviewed by defendants indicated that both David Sutton, due to autism, and Carlos Sutton, in the days immediately proceeding his death, were not mentally capable of understanding the legal effect of power of attorney documents or a last will and testament that they signed on November 11, 2013, making plaintiff beneficiary of Carlos Sutton's estate and making plaintiff David Sutton's power of attorney. (DE 63-10; DE 63-15; DE 63-17; DE 68 ¶ 5-6; DE 69-3; DE 70-10; DE 70-11).[6] Durward Matheny, a retired forensic document examiner, was hired by one of Carlos and David Sutton's relatives and prepared two reports after reviewing the documents at issue, and opined that the signatures found on Carlos Sutton's last will and testament and David Sutton's power of attorneys were not those belonging to Carlos and David Sutton, respectively. (DE 63-11; DE 68 ¶ 8-11; DE 69-6; DE 70-9).

On April 20, 2015, defendants obtained 6 felony arrest warrants for plaintiff from a magistrate in Columbus County for charges of uttering a forged instrument, forgery of an instrument, obtaining property by false pretenses, and exploitation of a disabled adult. (DE 1-4; DE 68 ¶ 15;

---

[4] It appears undisputed that David Sutton lived with Carlos Sutton and that Carlos Sutton was, and had been, David's primary caregiver.

[5] Although unclear, it does not appear that plaintiff disputes that plaintiff had moved in with Carlos Sutton, but presumably plaintiff would dispute the rest of Dennis's allegations. (See DE 82 at 3 (plaintiff alleging that "Dennis deliberately made a misleading or unfounded report.").

[6] It is unclear if plaintiff disputes that David Sutton was not mentally capable of understanding the legal effect of power of attorney documents, but plaintiff does not dispute that medical providers interviewed by defendants stated so.

5

DE 69-7; DE 70-3). Plaintiff was indicted by a grand jury. (DE 1 ¶¶ 42-43; DE 1-5; DE 68 ¶ 20). Subsequently, all charges against plaintiff were dismissed. (DE 1 ¶¶ 78-79; DE 68 ¶ 21).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to

be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.      Analysis

1.      Plaintiff's Motion for Summary Judgment

Plaintiff has failed to meet his burden of informing this court of the basis for his motion and identifying those portions of the evidence and record that he believes demonstrate there is no genuine issue of material fact. For example, plaintiff has failed to point to admissible evidence that demonstrates the essential elements of his claims. Rather, plaintiff relies on his own bare assertions, inapplicable or inconclusive answers from defendants to plaintiff's discovery requests, and irrelevant information regarding the SBI investigation of plaintiff. In sum, plaintiff has failed to show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Consequently, plaintiff's motion for summary judgment must be DENIED.

7

2. Defendants' Motion for Summary Judgment

The only claim currently before the court is plaintiff's claim against defendants in their individual capacity that defendants maliciously prosecuted plaintiff or violated plaintiff's Fourth Amendment rights by unlawful or unreasonable seizure. Defendants assert they have qualified immunity that bars plaintiff's claim. The court agrees.

The doctrine of qualified immunity, "when found to apply, bars § 1983 suits against government officers in their individual capacity." Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 330 (4th Cir. 2009). "Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). A qualified immunity defense involves a "two-step" inquiry, asking "first whether a constitutional violation occurred and second whether the right violated was clearly established." Id. (internal quotation marks omitted).

Regarding the first step in the present case, "[a] malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (internal quotation marks omitted). A plaintiff must show "that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." Id.

Plaintiff is unable to establish a constitutional violation because, although the underlying criminal proceedings were terminated in his favor, the prosecution was plainly supported by probable cause, as conclusively established by the indictment of plaintiff by the grand jury. "The

8

Supreme Court has long made clear that an indictment, fair upon its face, returned by a properly constituted grand jury, conclusively determines the existence of probable cause." Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014) (citing Durham v. Horner, 690 F.3d 183, 188-189 (4th. 2012)); see Smith v. Munday, 848 F. 3d 248, 255 (4th. Cir. 2017) (same).

However, if defendants deliberately lied to the grand jury and those lies influenced the grand jury's decision, defendants would not be shielded by immunity. See Durham, 690 F.3d at 189 (interior citation omitted) ("Notwithstanding the conclusive effect of the indictments, our precedents instruct that a grand jury's decision to indict will not shield a police officer who deliberately supplied misleading information that influenced the decision."). Plaintiff alleges, with no specific evidence offered, that defendants "intentionally lied not only to a magistrate," in order to secure the warrant to arrest plaintiff, but also to "the prosecutor and grand jury knowing that there was no sufficient evidence to establish" that plaintiff committed any of the crimes alleged. (DE 63 at 4; see also DE 70-5 at 8 ("they knew there was nothing in the criminal investigation file to say that [defendant] did any of the crimes, but yet they appeared before a magistrate anyhow and intentionally lied"). Plaintiff appears to be saying that the lie told by defendants to the magistrate judge, prosecutor, and grand jury was that defendants had sufficient evidence to support seeking a warrant.[7]

The Fourth Circuit has made clear that "false statements alone do not . . . run afoul of the Fourth Amendment," and such statements must be "material, that is, necessary to the finding of probable cause." Massey, 759 F. 3d at 357 (interior citation omitted) (affirming grant of summary

---

[7] Plaintiff may also be contending that defendants supplied false information and false evidence to the magistrate judge, prosecutor, and grand jury, but plaintiff offers the court no indication what that false information or false evidence may be and no evidence that such information or evidence exists is found in the record.

9

judgment where officer's alleged fabricated evidence did not undercut the grand jury's probable cause determination). Here, plaintiff has not alleged how defendants misled the magistrate judge, prosecutor, and grand jury other than asserting that defendants lacked probable cause and stated otherwise.

Such allegations are insufficient, and the Fourth Circuit's analysis in Durham v. Horner is instructive. Similar to the lack of evidence before the Durham court, this court has "no basis for concluding that [defendants] tainted the grant jury process" and "the record does not disclose the evidence that the grand jury heard and considered." Durham, 690 F. 3d at 189. Additionally, no evidence has been offered that defendants acted maliciously or conspired to mislead the grand jury, thus "the grand jury's probable cause determinations and . . . indictment[ was] the proximate cause of [plaintiff's] arrest and detention, which by operation of law constituted a reasonable seizure." Id.

Again, like the Durham court, if the court "were disposed to look behind the indictments in this case," the court would find ample probable cause existed viewing the evidence and all reasonable inferences drawn from it in the light most favorable to plaintiff. Id. at 190. Dennis Sutton filed the initial report alleging that plaintiff was involved in forging documents and provided investigators information that indicated plaintiff had moved in with Carlos and David and was exercising influence over them, Carlos and David's medical providers opined that neither would have been able to comprehend the legal documents that they signed, the legal documents signed provided for plaintiff to be David's power of attorney and the recipient of Carlos' estate, and a forensic document examiner produced reports stating that the signatures on the documents at issue

were not authored by Carlos and David.[8]

Plaintiff also appears to argue that because other evidence existed that was not considered (or could not have been considered) by defendants that would have indicated that plaintiff was not guilty of any crime, defendants lack probable cause.[9] Indeed, "[a]n officer cannot invoke qualified immunity where he did not avail himself of readily available information that would have clarified matters to the point that [the criminal charges] would have been flatly ruled out as factually insupportable." Goodwin v. Metts, 885 F.2d 157, 164 (4th Cir. 1989) (interior citation omitted). However, no such information is found in this case, and defendants were "not required to exhaust every potentially exculpatory lead or resolve every doubt about [plaintiff's] guilt before probable cause [was] established." Durham, 690 F. 3d at 190 (citing Miller v. Prince George's Cnty., MD, 475 F.3d 621, 630 (4th Cir. 2007) (internal quotation marks omitted)). As stated by the Fourth Circuit, "even if the existence of probable cause were a close question, the qualified immunity standard gives ample room for mistaken judgments." Id. (citing Henry, 652 F.3d at 534; Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir.1992)).

Defendants' motion for summary judgment is GRANTED.

---

[8] Plaintiff also argues that "the warrants should not have been applied for" in the first instance. (DE 75 at 12). The Fourth Circuit has stated that an arrest warrant will not shield a police officer from liability for false arrest if "a reasonably well-trained officer in [his] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." Goodwin v. Metts, 885 F.2d 157, 162 (4th Cir. 1989) (citing Malley v. Briggs, 475 U.S. 335 (1986)). However, because this court finds that defendants had probable case to seek arrest warrants against plaintiff, it is unnecessary to address this argument.

[9] For example, plaintiff makes repeated reference to the report of Emily Will, board certified document examiner, submitted by plaintiff, that concludes the signature on Carlos Sutton's will is authentic. (See DE 63 at 4; DE 63-6; DE 75 at 7; and DE 82 at 5). It appears that plaintiff had this analysis performed, and the court notes that the report was issued May 1, 2015, over a week after defendants appeared before the magistrate judge in order to secure a warrant. (See DE 63-3); Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017) ("A court should only consider the information the officers had at the time they sought the warrant."). Plaintiff additionally offers alleged conversations that occurred between him and Ted Dixon, a police officer in Whiteville, who plaintiff argues told plaintiff that there was insufficient evidence against plaintiff. (DE 63-19, DE 63-20, and DE 63-21). It is unclear how this information, even if true, relates to defendants' investigation.

3.     Defendants' Motion to Seal

Defendants move to seal memorandum of law in support of defendants' motion for summary judgment with supporting attachments and defendants' statement of undisputed material facts with supporting attachments, arguing these documents "reference[] information, data, and materials contained [in] the State Bureau of Investigation file which is deemed confidential and not subject to public disclosure," pursuant to North Carolina General Statute § 132-1.4 and the court's protective order signed December 6, 2016. (DE 61 and 71); see N.C. Gen. Stat. Ann. § 132-1.4(a) (" Records of criminal investigations conducted by public law enforcement agencies, records of criminal intelligence information compiled by public law enforcement agencies . . . are not public records . . . [but] may be released by order of a court of competent jurisdiction."). Plaintiff opposes. (DE 74).

In evaluating a motion to seal, in accordance with the mandatory procedure outlined by the Fourth Circuit in Stone v. University of Maryland, 855 F.2d 178 (4th Cir. 1988), the court must first "determine [whether] the source of [the public's] right of access . . . is based on the common law or the First Amendment" with respect to each document to be sealed. Id. at 180. This is because "different levels of protection may attach to the various records and documents involved in [a] case." Id.

"The common law presumes a right to inspect and copy [all] judicial records and documents," and this presumption "may be overcome if competing interests outweigh the interest in access." Id. (citing Nixon v. Warner Communications, Inc., 435 U.S. 589, 597 (1978); Rushford v. The New Yorker Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988); In re Washington Post Co., 807 F.2d 383, 390 (4th Cir. 1986)).

The First Amendment guarantees a heightened presumption of access "only to particular judicial records and documents," including "documents filed in connection with [a] summary judgment motion in civil case." Id. (citing Rushford, 846 F.2d at 253). "Where the First Amendment guarantees access, . . . access may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Id. (citing Rushford, 846 F.2d at 253; Press–Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984)).

To ensure proper weighing of such interests, "a court must first give the public notice of a request to seal and a reasonable opportunity to challenge it." Id. at 181 (citing In re Knight Publishing Co., 743 F.2d 231, 235 (4th Cir. 1984)). "While individual notice is unwarranted, the court must notify persons present in the courtroom of the request, or docket it 'reasonably in advance of deciding the issue.'" Id. (quoting Knight, 743 F.2d at 235). "The court must consider less drastic alternatives to sealing and, if it decides to seal documents, must 'state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review.'" Id.

Defendants' motion seeks to seal memoranda and exhibits filed in connection with defendants' motion for summary judgment, and therefore the more rigorous First Amendment standard applies and the moving party must demonstrate that a denial of access to a document is "necessitated by a compelling government interest and narrowly tailored to serve that interest." Rushford, 846 F.2d at 253.

Defendants have met their burden regarding documents and exhibits connected to defendants' SBI investigation not already found in full in the record. See Knight Estate of Graham v. City of Fayetteville, 234 F. Supp. 3d 669, 684 (E.D.N.C. 2017) (granting motion to seal in part

13

and keeping the SBI file under seal); Alexander v. City of Greensboro, No. 1:09-CV-00293, 2013 WL 6687248, at *4 (M.D.N.C. Dec. 18, 2013) (citing N.C. Gen. Stat. § 132–1.4) ("[B]ecause the City and the GPD Defendants have met their burden . . . . The documents sought to be sealed in this motion are confidential under North Carolina law.").

Applying the above principles, the court grants in part and denies in part defendants' motion to seal. The memorandum in support of defendant's motion for summary judgment contain excerpts from interviews taken by defendants pursuant to the SBI investigation and will remain sealed. (DE 67). However, defendants' statement of undisputed material facts does not itself contain confidential information for which an interest in sealing outweighs the public right of access and contains information provided elsewhere in the record and therefore will not remain sealed. (DE 68).

Turning to defendants' supporting attachments, defendants have submitted 12 exhibits in support of memorandum in support of defendants' motion for summary judgment and have submitted 8 of those same 12 exhibits in support of defendants' statement of undisputed material facts. The court finds exhibits DE70-1/DE 69-1 and DE 70-8 to already be in the record in full and therefore they will not remain sealed. The court additionally finds the affidavit of Karen F. "Kaitlyn" Richards Toole, (DE 70-3/69-7), plaintiff's discovery responses as offered by defendants, (DE 70-5), and the affidavit of Durward Matheny, (DE 70-9/69-6), do not themselves contain confidential information for which an interest in sealing outweighs the public right to access. The rest of the supporting documents are either excerpts from interviews as found in the SBI file or are affidavits with the same excerpts attached and will remain sealed. (DE 70-2/69-2; DE 70-4/69-8; DE 70-6; DE 70-7/69-4; DE 70-10; DE 70-11/69-3; DE 70-12/69-5).

In sum, the court grants defendants' motion to seal regarding the following document and

exhibits: DE 67; DE 70-2/69-2; DE 70-4/69-8; DE 70-6; DE 70-7/69-4; DE 70-10; DE 70-11/69-3; DE 70-12/69-5. The court denies defendants' motion to seal regarding the following document and exhibits: DE 68; DE 70-1/69-1; DE 70-5; DE 70-3/69-7; DE 70-8; DE 70-9/69-6.

    4.       Plaintiff's Motion to Strike

Plaintiff moves to strike defendant's motion for summary judgment, memorandum of law, and statement of material facts pursuant to Federal Rule of Civil Procedure 12(f). In support of his motion, plaintiff appears to argue that plaintiff disputes the materials submitted by defendants and that the materials are incompetent, misleading, and hearsay. (DE 76 at 2). However, plaintiff then proceeds to argue the merits of the case, as opposed to pointing to specific materials submitted by defendants that are incompetent, misleading, or hearsay, repeating verbatim sections of plaintiff's opposition to defendants' motion for summary judgment. (See id.; DE 75). The court is unable to determine which of the defendant's materials plaintiff is addressing in his motion, and therefore, plaintiff's motion to strike is DENIED.

### CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment (DE 62) is DENIED, defendant's motion for summary judgment (DE 66) is GRANTED, plaintiff's motion to strike (DE 76) is DENIED, and defendant's motion to seal (DE 71) is GRANTED IN PART and DENIED IN PART. Although a response and not a motion, plaintiff's motion to deny defendant's motion to seal (DE 74) is DENIED. Additionally, Hal F. Askins' motion to withdraw as attorney (DE 84) is GRANTED. The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 11th day of October, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge